### [No. 1808, June 12, 1916.]
## CITY OF ROSWELL v. JACOBY et al

### SYLLABUS BY THE COURT.

1.  Under subsections 18 and 66 of section 3564, Code 1915, and section 3621, Code 1915, a city or town has power to require the giving of a bond as security that a druggist will obey the law in dispensing liquor.

P. 706

2.  The penalty of such a bond is not a "penalty" by way of punishment for a violation of the law.

P. 709

3.  But where the cause of action on the bond is made by the ordinance, as in this case, to arise only upon the conviction of the obligor of a violation of the law, the intention of the city is made to appear to punish the offender in the amount of the penalty of the bond, which punishment is in excess of the amount allowed by the statute, and the ordinance is consequently void.        P. 712

Appeal from District Court, Chaves County; John T. McClure, Judge.

Action by the City of Roswell against P. C. Jacoby and

City of Roswell v. Jacoby, 21 N. M. 702.

others. From judgment for plaintiff, defendants appeal. Reversed and remanded, with directions to dismiss.

- W. A. DUNN, L. O. FULLEN and H. C. MAYNARD, all of Roswell, for appellants.

Bond had reference to penalty; not liquidated damages.

Kelley v. Seay, (Okla.) 41 Pac. 615; Mercer County v. Stupp Bros. Bridge & Iron Co., 115 Ill. App. 298; State v. McConnell, (N. H.) 46 Atl. 458; Van Buren v. Digges, 52 U. S. (11 How.) 461, 477, 13 L. Ed. 771; Commonwealth v. French, 114 S. W. 255; Butler v. Butler, 40 S. E. 138, 142, 62 S. C. 165; Harbor Com'rs of Port Eureka v. Redwood Co., 26 Pac. 375, 88 Cal. 491, 22 Am. St. Rep. 321.

The use of the words "forfeiture" and "penalty" estops city from claiming damages are liquidated. But even if this is doubtful, doubt must be resolved in favor of theory that bond provided for penalty rather than for liquidated damages.

Van Buren v. Digges, 52 U. S. (11 How.) 461, 13 L. Ed. 771; Amanda Consol. Gold Min. Co. v. People's Min. & Mill. Co., 64 Pac. 218, 28 Colo. 251; Cushing v. Drew, 97 Mass. 445; Harris v. Miller, 11 Fed. 118; Baird v. Tolliver, (Tenn.) 44 Am. Dec. 298; Foley v. McKeegan, (Iowa) 66 Am. Dec. 107; Davis v. Gillett, 52 N. H. 126; Ewing v. Litchfield, (Va.) 22 S. E. 362.

Powers of city not enlarged because of execution and delivery of bond.

State v. Estabrook, 29 Kan. 530; City of Minneapolis v. Olson, (Minn.) 78 N. W. 877.

Dow & FORT of Roswell, for appellee.

City had power to require the bond.

- In re Schneider, 8 Pac. 289; Jones v. Paducah, 104 S. W. 971; Campbell v. Thomasville, 64 S. E. 815; 1 Woolen & Thornton Int. Liq. sec. 274; 23 Cyc. 72.

Action may be brought on such bonds before conviction of obligor.

State v. Pierce, 26 Kan. 777; State v. Corron, supra; Paducah v. Jones, supra. See also upon the constitutional question involved: Louisville v. R. R. Co., (Ky.) 98 Am. St. Rep. 387; Printing Co. v. New Orleans, 25 South. 313.

Sum named in bond is liquidated damages.

1. Pom. Eq. Jur. sec. 440; 1 Sedgwick Dam. (9th ed.) sec. 391; 13 Cyc. 91; Pendleton v. Electric Light Co. (N. C.) 27 S. E. 1003; Pressed Steel Car Co. v. Eastern Ry. Co., 121 Fed. 609; Dobbs v. Turner (Tex. Civ. App.) 70 S. W. 458; Eakin v. Scott, 70 Tex. 442; Hardie Co. v. Glenn Allen Oil Mill (Miss.) 36 South. 262; McCurry v. Gibson, 108 Ala. 451, 54 Am. St. Rep. 177; Sanford v. Bank, 94 Iowa, 680; Goldman v. Goldman, 51 La. Ann. 761; Kinkle v. Wherry, 189 Pa. St. 198, 69 Am. St. 802; Muse v. Swayne, 70 Tenn. 251, 31 Am. Rep. 607; Pastor v. Solomon, 54 N. Y. Supp. 576; Hardee v. Howard, 33 Ga. 533, 83 Am. Dec. 176; Robinson v. Centenary Fund, 68 N. J. L. 723; In re White, 84 L. T. 594.

## OPINION OF THE COURT.

PARKER, J.—This is an action by the city of Roswell against Jacoby and his sureties upon a bond given by him to the city as a condition precedent to the issuance to him of a druggist's permit to sell intoxicating liquors for medicinal purposes under the provisions of the prohibition ordinance then in force in that city, the bond being in the sum of $2,000, and conditioned that he would in good faith observe the provisions of this ordinance relating to apothecaries as such. The complaint alleged a violation of the ordinance, and the conviction of Jacoby of violating the same, and sought a forfeiture of the bond and the recovery of the full amount thereof as liquidated damages. The defendant demurred to the complaint on the grounds that the sum named in the bond was a penalty, and the city had no authority to provide a penalty for a violation of an ordinance in excess of a fine of $300 and imprisonment for more than 90 days; that the bond being a penalty, and Jacoby having paid the

City of Roswell v. Jacoby, 21 N. M. 702.

fine imposed, the city could collect nothing more; and
that no damages were alleged. This demurrer was over-
ruled. The defendant answered, and as a fourth defense
set up an alleged compromise and agreement between
Jacoby and the city that Jacoby was to enter a plea of
guilty in 1 of 13 similar cases, and to pay a fine of $25
and costs, and pay a fine of $1 in each of the 12 other
cases with suspended sentence, and, upon this being done,
the city was to make no further claim against him for
the alleged violation of the law. The plaintiff demurred
to this defense, upon the ground that it violated the Con-
stitution of this state, forbidding a municipality to settle
any claim for less than face value except by proper legal
proceedings. This demurrer was sustained. The case
then came on for trial before the court, and the defend-
ants objected to the introduction of evidence for the rea-
son that the complaint did not state facts sufficient to
constitute a cause of action, specifically attacking the same
on the grounds stated in their demurrer theretofore sub-
mitted. The objection was overruled, and the court heard
the case and gave judgment in accordance with the prayer
of the complaint. The defendants appeal.

The pertinent provisions of the statute are as follows:
Subsection 18 of section 3564, Code 1915, grants specific-
ally the power to cities "to have the right to license, regu-
late, or prohibit the selling or giving away of any intoxi-
cating, malt, vinous, mixed or fermented liquor, within
the limits of the city or town: * * * Provided, that the
city council in cities, or board of trustees in towns, may
grant permits to druggists for the sale of liquor for me-
dicinal, mechanical, sacramental, and chemical purposes
only, subject to forfeiture, and under such restrictions and
regulations as may be provided by ordinance. * * *"
Subsection 66 of the same section provides that cities and
towns shall have the power "to pass all ordinances, rules,
and make all regulations proper or necessary to carry into
effect the powers granted to cities or towns, with such
fines and penalties as the council or board of trustees shall
deem proper: Provided, no fine or penalty shall exceed
three hundred dollars, and no imprisonment shall exceed

ninety days for one offense." Section 3621, Code 1915, provides that:

"Municipal corporations shall have power to make and publish, from time to time, ordinances not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by law, * * * and to en-force obedience to such ordinances by fines not exceeding three hundred dollars, or by imprisonment not exceeding ninety days, by suit or prosecution before any justice of the peace within the limits of such city or town."

The city of Roswell, prior to the issuance of the permit to Jacoby and another, had in force an ordinance, sections 11 and 16 whereof are as follows:

"Section 11. Before any apothecary shall sell or dispense any intoxicating liquor under the authority of section 10 of this ordinance he shall first obtain from the city clerk of said city of Roswell a permit authorizing him to do so; provided, no such permit shall be issued until after such apothecary shall have executed and delivered a good and sufficient bond to the city of Roswell in the sum of $2,000 to be approved by the mayor and city attorney of the city of Roswell, conditioned for the observance in good faith of the provisions of this ordinance applicable to apothecaries as such, and upon conviction of the offense of violating any of the provisions of this ordinance, such bond shall be forfeited to the city, and such apothecary shall, in addition to the penalties imposed by said bond and the other penalties and punishments prescribed by this ordinance, be forever prohibited from selling or dispensing liquor under and by authority of this ordinance, and his permit to sell and dispense shall upon such conviction become ipso facto void."

"Section 16. Any persons who shall violate any of the provisions of this ordinance or who shall fail to comply with any of the provisions thereof, shall be deemed guilty of an offense against the city of Roswell and upon conviction thereof shall be fined in any sum not exceeding $100.00 or by imprisonment not exceeding thirty days, or by both such fine and imprisonment in the discretion of the court trying the cause.

"Any person who shall be convicted of the violation of this ordinance shall, after the first offense, be fined in any sum not exceeding $300.00 or imprisonment not exceeding ninety days or both such fine and imprisonment in the discretion of the court trying the cause."

[1] The first proposition presented is as to whether the city of Roswell had the power by ordinance to require the giving of a bond. It is to be observed that there is

no express power granted cities and towns to make such a requirement. The power, if it exists, is an implied power. It is argued by appellee, in support of the judgment, that the power to "license, regulate, or prohibit the selling or giving away" of liquors, and the power to "grant permits to druggists for the sale of liquor for medicinal, mechanical, sacramental and chemical purposes only, subject to forfeiture, and under such restrictions and regulations as may be provided by ordinance," implies the power to exact of the druggist a bond as security that the druggist will obey the law. Unrestrained by any other provisions of the statute granting these powers, it may be conceded that the position of the appellee is correct upon reason and the weight of authority. Thus, in the case of In re Schneider, 11 Or. 288, 8 Pac. 289, it is said:

"Under an authority to 'regulate and restrain barrooms and drinking shops' is conferred power to require, as a proper measure of regulation and restraint, a bond to be given by an applicant for a license to keep a 'barroom' or 'drinking shop' within the city limits."

This is a very well-reasoned case, and, so far as we can ascertain, has never been departed from in Oregon. In City of Paducah v. Jones, 126 Ky. 809, 104 S. W. 971, under a statute authorizing municipalities to regulate and control the granting of liquor licenses, the Supreme Court of Kentucky said:

"The statute has invested these municipalities with the exclusive right to regulate and control the granting of liquor licenses; the only limitation upon their discretion being that the conditions imposed shall not be arbitrary or unreasonable. Within these limitations, they have the right to provide as a precedent to the granting of the license that the applicant shall perform all the conditions imposed. It is with him to decide whether he will accept it or not. The license is not a right that the applicant may demand and have for the asking. It is a mere privilege that the authorities may or may not give in their discretion. It cannot be successfully maintained that the requirement of the execution of a bond that the licensee will observe the law is an unreasonable condition. On the contrary, it is not only a reasonable, but a proper, condition, the imposition of which exercises a restraining influence and has a tendency to compel an observance of the law."

See, also, Campbell v. City of Thomasville, 6 Ga. App. 212, 64 S. E. 815, to the same effect.

Counsel for appellant cite two cases opposed to this view. State v. Estabrook, 29 Kan. 739; City of Minneapolis v. Olson, 76 Minn. 1, 78 N. W. 877. In City of Minneapolis v. Olson, supra, there was a state statute authorizing the requirements of a bond to the state. The city of Minneapolis, however, took bond to itself in the sum of. $2,-000. The taking of this bond was sought to be justified under an alleged implied power arising out of a grant of power to make "all such ordinances for the government and good order of the city, for the suppression of vice and intemperance and for the prevention of crime, as it shall deem expedient, and in and by the same to declare and impose penalties and punishments, and enforce the same. * * * And for these purposes said city council shall have authority by such ordinances: First, to license and regulate * * * all persons vending, dealing in or disposing of spirituous, vinous, fermented or malt liquors." Another section of the statute provides:

"The city council may impose punishment for any breach of any ordinance of the city to the extent of a fine not exceeding one hundred dollars and imprisonment in the city prison or county jail not exceeding ninety days."

Under these provisions it was sought to justify the city council in requiring a $2,000 bond of a liquor dealer. The court said:

"The contention seems to be that, while the 'punishments' mentioned in section 5 are limited to a fine not exceeding $100 for each breach of the ordinance, the 'penalties' mentioned are unlimited, and therefore the city council can, for the purpose of enforcing its ordinances, impose any amount of penalty it sees fit. We cannot so hold. The authority to impose penalties, and especially excessive penalties, must be strictly construed. The utmost which these two sections authorize is the imposition of a penalty of $100 in lieu of a fine of that amount, whether, under the general powers granted by the charter, the council could require a bond in the sum of $2,000 to secure the payment of all such fines and costs as would be imposed for violation of the ordinances, and whether this is such a bond, we need not consider. No fine or costs remain unpaid in this case, but the city is attempting to enforce this bond as a purely penal bond. In our opinion, the city has no authority to take or enforce any such bond."

In State v. Estabrook, supra, the question was as to the amount of recovery which could be had upon a bond of the character in question, and the case is not strictly in point in this part of the discussion. The Minnesota case is the only case which has been called to our attention which has denied the implied power to require a bond of a liquor dealer under statutes authorizing cities or towns to regulate the liquor traffic. The general current of opinion seems to be that such bond may be exacted as a condition precedent to the granting of a permit to sell liquor, in the absence of any restraining influence arising out of other provisions of the statute.

[2] Counsel for appellant, however, rely upon subsection 66 of section 3564 and section 3621, Code 1915. These two sections are parts of the same act, and are sections 14 and 15 of chapter 39 of the Laws of 1884. They must, of course, be read together, and in fact there is no conflict between them, except that section 3621 is somewhat broader than subsection 66 of section 3564. It is to be observed that subsection 66 provides for "such fines and penalties as the council or board of trustees shall deem proper: Provided, no fine or penalty shall exceed three hundred dollars, and no imprisonment shall exceed ninety days for one offense." The language of section 3621 provides the power to "enforce obedience to such ordinances by fines not exceeding three hundred dollars, or by imprisonment not exceeding ninety days, by suit or prosecution." It is argued by appellee that these two sections have reference only to proceedings by way of punishment for violation of such ordinances, and have no controlling effect whatever upon the question of the right to take a bond, such as was taken in this case. Counsel for appellant, however, argue that these provisions absolutely control and prohibit the imposition of a penalty greater than $300, and that the ordinance and bond consequently are void. A solution of this question depends upon a determination as to whether the penalties mentioned in the sections, above quoted, are the kind of penalties contemplated in the bond given by the appellant. A careful examination of these statutes has con-

vinced us that the penalties therein mentioned are penalties designed as punishment for a violation of the ordinance. These are expressly authorized by statute, and are in the nature of fines to be recovered, either by prosecution or by action in the proper court. They bear no resemblance whatever to the penalty mentioned in the bond. Thus, in Re Schneider, 11 Or. 288, 8 Pac. 289, it is said:

"But the penalty in a bond of this character, which the obligor may become liable to pay on a breach of its conditions, is not, either technically or in fact, a punishment for a violation of any city ordinance. If the council passes an ordinance requiring a bond as one of the conditions of granting license, and a person engages in the business for which the license is required without first obtaining it, he might be punished for a violation of the ordinance, and the limitation as to punishment would apply. But if he gives the bond and procures the license, subsequent breaches of the conditions of the bond would not amount to violations of the ordinance. He would simply render himself liable on his contract; and the real question must be, not as to the power to punish, but as to the power to exact the obligation by contract as a legitimate measure of regulation or restraint. * * * Punishment for a violation of a city ordinance under the charter cannot exceed $300 and 90 days' imprisonment. The amount to be paid for license to keep a 'barroom' or 'drinking shop' must be established by ordinance. If the ordinance requires a greater sum to be paid for license than could be exacted as punishment, if a person should proceed to engage in such business, without obtaining a license, would it therefore be void? Has the amount of such punishment any relation to the amount which may be required for the license? The bond required as a measure of regulation or restraint stands on the same footing as the license fee in this respect. If the council has the power under the charter to require the bond as a proper measure of regulation or restraint, then the only limitation upon its amount or conditions is that of reasonableness, and the provisions as to the amount of punishment which may be imposed for a violation of the ordinance exacting it can have no bearing. There is no essential connection or correspondence between the legal obligation of an ordinance and the penalties for its violation. If the latter is insufficient, the ordinance may be ineffectual, but is not therefore invalid. In the case at bar, the requirement of the bond is part of the obligation of the ordinance, and quite distinct from the penalty provided for its violation."

Also, in City of Paducah v. Jones, 126 Ky. 809, 104 S. W. 971, it is said:

"Nor will the bond be satisfied by the payment of the fine imposed in criminal proceedings against the principal. It is

City of Roswell v. Jacoby, 21 N. M. 702.

an independent obligation exacted as additional protection to compel an observance of the law, and the sureties are bound by the terms of their undertaking to pay the full amount specified if its conditions have been broken.   The requirement of a bond with surety in a fixed sum would be almost a useless formality if it could be satisfied by the payment of a fine entered against the principal.   This idea is not embraced either in the letter or meaning of the bond. There is no mention that the satisfaction of the fine will discharge it.   The collection of the penalty is a matter between the municipality and the offender, and the sureties have no concern in its payment, and are not responsible for it."

In State v. Corron, 73 N. H. 434, 62 Atl. 1044, 6 Ann. Cas. 486, the statute of the state provided for the taking of the bond, and the question in that case was whether an acquittal in a criminal prosecution for a violation of the ordinance operated to prevent a recovery on the bond. The court held that the acquittal of the defendant had no effect upon the right of recovery upon the bond.   The court said:

"The material inquiry, therefore, is:   What was the legislative purpose in authorizing the civil action granted the state?   Did the Legislature intend thereby to provide for the infliction of punishment upon the licensee who violated the provisions of the statute, and * * * to secure to the state compensation for loss sustained in consequence of such wrongdoing?"

The court quotes from People v. Briggs, 114 N. Y. 56, 20 N. E. 820, as follows:

"Generally, 'the purpose of an action' of this kind 'is not the punishment of the defendant in the sense legitimately applicable to the term, but such action is brought to recover the penalty as a fixed sum by way of indemnity to the public for the injury suffered by reason of the violation of the statute.   The effect of the recovery is merely to charge the defendant with pecuniary liability, while a criminal prosecution is had for the purpose of punishment of the accused.' "

The New Hampshire court say further:

"Upon all the competent evidence, it appears more probable that the purpose of the civil action now before the court was compensation and not punishment.   It follows, therefore, that the prior conviction of the licensee is not essential to the maintenance of a suit on the bond, and that his previous acquittal is not a defense."

It is to be noted in this connection that in neither of the foregoing cases was there such an ordinance as we have here. In those cases the question was whether the penalty of the bond was a kind of penalty which was to be inflicted by way of punishment, and it was held not to be such. The bond in this case, which is unobjectionable in form, in connection with the statutes, and uncontrolled by the terms of the ordinance, would clearly be a valid contract upon which a recovery could be had.

[3] A much more serious consideration is presented by reason of the language used in the city ordinance. As before seen it provides that:

"And upon conviction of the offense of violating any of the provisions of this ordinance, such bond shall be forfeited to the city, and such apothecary shall, in addition to the penalties imposed by said bond and the other penalties and punishments prescribed by this ordinance, be forever prohibited," etc.

Under this ordinance it is clearly impossible for any liability to arise upon this bond until after a conviction. Without such conviction no action can be maintained upon the bond, and the liability under the bond flows as a direct consequence of the conviction for a violation of the ordinance. Under such circumstances it would seem that the city intended that the liability upon this bond should arise as a direct consequence of, and by way of punishment for, a violation of the provisions of the ordinance. To hold otherwise would be to ignore the plain meaning of the terms used and the conditions upon which the liability under the bond is made to arise.

As has before been pointed out, it was perfectly competent for the city of Roswell, under its power to "license, regulate or prohibit the selling or giving away" of liquors, and its power to "grant permits to druggists for the sale of liquor for medicinal, mechanical, sacramental and chemical purposes only, subject to forfeiture, and under such restrictions and regulations as may be provided by ordinance," to have required by ordinance the giving of the $2,000 bond as a prerequisite to the right to dispense liquor. In such case there would be no question but that this would be a proper means of regulation

and restriction, and the city would have the right to recover upon the bond whether the obligor therein was convicted of the violation of the ordinance of the city or not. The fact remains, however, that no such ordinance had been adopted by the city of Roswell. The city chose to adopt the ordinance in an entirely different form, and in such form as that the penalty thereof is to be visited upon the obligor and his sureties as a direct consequence of the conviction of the obligor. The bond in such circumstances cannot be held to be a contract for liquidated damages, but is for a penalty recoverable as a direct consequence of a criminal proceeding against the offender. This being so the bond falls within the prohibition of the statute, which limits all penalties to the sum of $300.

This conclusion renders it unnecessary to discuss some of the other questions presented in the case.

For the reasons stated, the judgment of the court below will be reversed and the cause remanded, with instructions to dismiss the complaint; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

SYLLABUS BY THE COURT.

